UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MODESTO BARAJAS-RAMOS,<br><br>Defendant. | NOS. CR-01-2048-RHW<br>CR-06-2058-RHW<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; SETTING HEARING FOR SUPERVISED RELEASE VIOLATION HEARING** |

Before the Court is Defendant's Motion to Dismiss (Ct. Rec. 36). A hearing was held on the motion on August 29, 2006, in Yakima, Washington. Defendant was present and represented by Kurt Rowland. The Government was represented by Assistant United States Attorney Shawn Anderson.

Defendant is asking that the Court to dismiss the Indictment charging him with Being an Alien in the United States After Deportation for two reasons: (1) the immigration officer that signed the 2004 reinstatement of the deportation order acted *ultra vires*; accordingly, the 2004 deportation is not valid and cannot be the basis for the present charge; (2) the 1991 deportation hearing, which is the basis for the 2004 deportation hearing, violated his due process rights. Because the Court finds that the 1991 deportation hearing violated Defendant's due process rights, it is not necessary to address the *ultra vires* argument. *See Arreola-Arreola v. Ashcroft*, 383 F.3d 956, 961 (9th Cir. 2004) (holding that the validity of the reinstatement order depends on the validity of the prior removal order).

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; SETTING HEARING FOR SUPERVISED RELEASE VIOLATION HEARING ~ 1**

## BACKGROUND

On February 27, 1991, the Immigration and Naturalization Service (INS) (now Bureau of Immigration and Custom Enforcement, BICE) issued an Order to Show Cause to Defendant, claiming that he was subject to removal from the United States based on allegations that he was not a citizen of the United States; he was a citizen of Mexico; he entered the United States on or about 1979, without inspection; and on April 6, 1989, he had been convicted in Washington State for possession of a controlled substance.

Defendant appeared before an Immigration Judge on March 6, 1991. At the proceeding, the IJ reviewed the charges in the Order to Show Cause, but he did not discuss any form of relief with Defendant. Defendant waived his right to appeal. At the conclusion of the hearing, the IJ ordered Defendant removed to Mexico. He was physically removed from the United States on March 7, 1991.

On September 3, 2004, Defendant was served with a notice of intent to reinstate the March 6,1991, Order of Removal. The notice stated that Defendant did not have a right to a hearing before an IJ with respect to the removal. On September 3, 2004, Defendant was deported pursuant to the reinstated Order of Removal. The September 3, 2004, deportation forms the basis of the current Indictment.

## DISCUSSION

Under certain circumstance, a defendant can collaterally attack the prior deportation hearing that is the underlying basis for a § 1326 criminal charge. *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987). A due process violation during the deportation proceeding is a recognized circumstance. *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). In order to succeed in a due process collateral challenge to the underlying deportation in a criminal prosecution under § 1326, a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding; and (2) he suffered prejudice

as a result of the defects. *Id.*

In *Arrieta*, the Ninth Circuit recognized that an alien cannot make a considered and intelligent decision about his right to appeal if the IJ never informed the alien of his eligibility for a § 212(h) waiver. *Id*. The Circuit reasoned that an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right. *Id.* It is the Government's burden to show by "clear and convincing evidence" that an alien's waiver of rights during an immigration hearing was "considered and intelligent." *United States v. Pallares-Galan*, 359 F.3d 1088, 1097 (9th Cir. 2004). The Circuit also stated in strong terms that "where the record contains an inference that the petitioner is eligible for relief from deportation the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *Id.* Indeed, this requirement is mandatory. *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998).

It is undisputed that the IJ failed to advise Defendant that he may have been eligible for relief from deportation. This was in error because the record before the IJ supports an inference that Defendant was eligible for relief from deportation.

Generally, an immigrant is ineligible for admission if he or she has been convicted for a violation of any law or regulation relating to a controlled substance. 8 U.S.C. § 1182(a)(2)(A)(i)(II). Section 1182(h) (§ 212(h)), however, provides that if an immigrant meets certain conditions, he or she may seek a waiver of inadmissibility.

Specifically, section 212(h) states that:

> The Attorney General may, in his discretion, waive the application of . . . subparagraph (A)(i)(II) of such subsection [(a)(2)(A)] *insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana if–*
> (1)(B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; SETTING HEARING FOR SUPERVISED RELEASE VIOLATION HEARING ~ 3**

resident spouse, parent, son, or daughter of such alien.

8 U.S.C. § 1182(h).

In this case, the record before the IJ was not clear regarding the amount of marijuana that was involved in the conviction. Thus, it was plausible that the conviction was for 30 grams or less. Also, it was clear from the record that his parents were lawful permanent residents. These two facts should have put the IJ on notice that he needed to inform Defendant that he may be eligible for relief. Without the knowledge that he could be eligible for relief, Defendant, who was not represented by counsel, could not make a considered and intelligent decision about whether to apply for a § 212(h) waiver, and could not make a considered and intelligent decision about whether to appeal the IJ's deportation order. *Arrieta*, 224 F.3d at 1079. Based on this defect in the underlying proceeding, Defendant's waiver of the right to appeal was invalid.

In its response, the Government asserts that Defendant's immigration file contained his prior application for temporary resident status, and the application was denied because of another prior drug conviction. This is not necessarily true. Although the letter written by the Immigration and Naturalization Service identified prior arrests, it also noted that Defendant had been given the opportunity to submit certified copies of the court dispositions of the charges against him, but he failed to submit the requested documents (Ct. Rec. 41, Ex. 2). Because he failed to demonstrate that he was not ineligible for adjustment of status, his application was denied. This letter did not provide conclusive evidence that Defendant would not have been eligible for relief.

In order to succeed in his collateral attack, Defendant must also show that he was prejudiced by the defect in the deportation proceeding. *Id.* In order to establish prejudice, Defendant does not have to show that he actually would have been granted relief. *Id.* Instead, he must only show that he had a "plausible" ground for relief from deportation. *Id.*

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; SETTING HEARING FOR SUPERVISED RELEASE VIOLATION HEARING ~ 4**

Defendant argues that, based on his family situation, he might have been granted a § 212(h) waiver. In order to obtain a § 212(h) waiver, Defendant would have to demonstrate that his deportation would cause "extreme hardship" to a spouse, parent, or child who is a citizen or lawful permanent resident. 8 U.S.C. § 1182(h). In support of his motion, Defendant provided declarations from both his mother and his father, who are lawful permanent residents. His father states that because Defendant was the oldest son in a family of six children, he considered his son to be his best friend. He stated that they were very close. Prior to Defendant being deported, he and his father would work together pruning trees, picking pears, and picking apples. As a result, Defendant helped the family financially by providing money for rent, bills, food, medical, and other family needs. His father sought out his counsel and relied on Defendant to help take care of his younger brothers and sisters.

His mother stated that Defendant helped the family by picking up his siblings from day care and fixing the meal she had prepared. He would stay with them until she or her husband would return from work. When he was with his siblings, he would play with them in the yard, watch television, and keep them company until one of his parents would come home. Defendant also acted as an interpreter for his mother and would accompany his mother on errands and assist her in translating conversations in English to Spanish.

The Government points out that Defendant has spent the majority of the last 15 years in jail or under court supervision. While this may be true, it has no bearing on whether, at the time of his first deportation hearing, it was plausible that Defendant's deportation would cause extreme hardship on his family.

In *Arrieta*, the circuit recognized that the existence of family ties in the United States is the most important factor in determining hardship. *Arrieta*, 224 F.3d at 1082. In this case, like *Arrieta*, there is enough evidence in the record to support a finding that it is plausible that Defendant would have received a waiver

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; SETTING HEARING FOR SUPERVISED RELEASE VIOLATION HEARING ~ 5**

of inadmissability.  As such, he was prejudiced by the Government's due process violation.  *Id.*

The Court recognizes that just as it is plausible that Defendant would be successful if he sought relief, it is equally plausible, based on his record, that he would be denied relief.  Even so, case law instructs that it is not necessary for Defendant to prove that he actually would have avoided deportation.  *United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1086 (9th Cir. 1996).  Here, the affidavits of his parents provide the "something more" that makes it plausible that he would have received a wavier of inadmissibility, which is all that is required under *Arrieta*.  *Arrieta*, 224 F.3d at 1083.  Because the 2004 reinstatement of deportation, which is the basis for this Indictment, was based on the 2001 deportation proceedings, and the 2001 deportation proceedings violated Defendant's due process rights, the 2004 deportation cannot be used as an element of his conviction under 8 U.S.C. § 1326, and the Indictment must be dismissed.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss (Ct. Rec. 36) is **GRANTED**.

2. The Indictment filed in CR-06-2058-RHW is **dismissed with prejudice.**

3. The supervised release violation hearing (CR-01-2048-RHW) is set for **September 26, 2006**, at **3:00 p.m.**, in Yakima, Washington.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and to provide copies to counsel.

**DATED** the 11th day of September, 2006.

*s/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CRIMINAL\2006\Barajas-Ramos\grant.dismiss.wpd

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; SETTING HEARING FOR SUPERVISED RELEASE VIOLATION HEARING ~ 6**